**ORAL ARGUMENT: APRIL 23, 2015**
In The

# United States Court of Appeals

For The District of Columbia Circuit

◆

No. 14-7079

LIFECARE MANAGEMENT PARTNERS, ET AL.,

*Defendant-Appellants*

*vs.*

KATHY RADTKE ET AL.,

*Plaintiff-Appellees,*

*Appeal from the denial of a motion following a jury
verdict issued by a petit jury in the
United States District Court for the District of Columbia
(Hon. John M. Facciola, Magistrate Judge)*

## CORRECTED BRIEF FOR PLAINTIFF-APPELLEES KATHY RADTKE ET AL.

S. MICAH SALB
DENNIS CHONG
Attorneys for Plaintiff-Appellants
    Kathy Radtke
    Carmen Cunningham
7979 Old Georgetown Road
Suite 1100
Bethesda, Maryland  20814
(301) 656-6905

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(A)    **Parties and Amici.**  All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Appellants.

(B)    **Rulings under Review.**  The Defendants appealed from the May 14, 2014, Memorandum Opinion and Order of the Hon. Magistrate Judge John M. Facciola denying the Defendants' motion pursuant to Rule 50 of the Federal Rules of Civil Procedure.  The Order can be found at page 395 of the Joint Appendix and is not reported in any official reporter.

(C)    **Related Cases.**  On December 30, 2014, the Plaintiffs filed an appeal of the December 30, 2014, Memorandum Opinion and Order of the Hon. Magistrate Judge John M. Facciola granting in part and denying in part the Plaintiffs' motion for attorney's fees and costs; it is docketed in this Court as Case Number 15-7003. Defendants then noted a cross-appeal of the same Order; that case was docketed as Case Number 15-7008, but on January 27, 2015, this Court *sua sponte* consolidated the two appeals under Case Number 15-7003.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES........ i

TABLE OF AUTHORITIES........................................... iv

STATEMENT OF THE ISSUES PRESENTED........................... 1

STATEMENT OF THE CASE. ....................................... 1

SUMMARY OF THE ARGUMENT. ................................. 2

STANDARD OF REVIEW.......................................... 4

ARGUMENT.................................................... 6

I.    The Employers Have Not Demonstrated That
      the Jury Lacked a Sufficient Evidentiary Basis
      for Finding That the Plaintiffs Were Nonexempt Employees........... 6

      A.    The Employers Did Not Meet Their Burden
            at Trial to Prove the Applicability
            of the Administrative Exemption........................... 8

            1.    Plaintiffs Did Not Exercise Discretion
                  and Independent Judgment with respect
                  to matters of significance............................ 9

            2.    The Plaintiffs Did Not Have
                  Significant Impact on General Business Operations........ 14

      B.    The Employers Did Not Meet Their
            Burden at Trial to Prove the Applicability
            of the Professional Exemption............................ 16

      C.    The Evidence Demonstrated That the
            Plaintiffs' "Primary Duty" Was Non-exempt Work............ 20

II. The Employers' Rule 59(b) Motion for a New Trial Based Is Baseless...... 25

    A.    The Employers' Conclusory Argument That the Jury
            Must Have Been Influenced by Ms. Radtke's
            Testimony Because It Rejected the Employers' Position
            Is Illogical and Does Not Demonstrate Cause for a New Trial. .... 27

    B.    The Employers Make No Argument at All
            Regarding Why Ms. Cunningham's Testimony
            Requires a New Trial. ................................... 28

    C.    The Employers Make No Argument
            Regarding Plaintiffs' Counsel's Closing Remarks
            and the Jury's Findings.................................... 29

CONCLUSION. ................................................ 31

# TABLE OF AUTHORITIES

## Cases

Ale v. Tenn. Valley Auth.,
    269 F.3d 680 (6th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Barbour v. Merrill,
    48 F.3d 1270 (D.C. Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Bowman v. Kaufman,
    387 F.2d 582 (2d Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Clarksville-Montgomery County School System v.
    U.S. Gypsum Co., 925 F.2d 993 (6th Cir. 1991).. . . . . . . . . . . . . . . . . . . 26

Corning Glass Works v. Brennan, 417 U.S. 188 (1974). . . . . . . . . . . . . . . . . . . 7

*Curry v. District of Columbia,
    195 F.3d 654 (D.C. Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Grogan v. General Maintenance Serv. Co.,
    763 F.2d 444 (D.C. Cir. 1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hansen v. Barrett,
    186 F.Supp. 527 (D. Minn.1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Hutchinson v. Stuckey,
    952 F.2d 1418 (D.C. Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Johnson v. United States,
    398 A.2d 354 (D.C.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kinney v. District of Columbia, 994 F.2d 6 (D.C. Cir. 1993). . . . . . . . . . . . . . . 7

*Authorities upon which we chiefly rely are marked with asterisks.*

*Maestas v. Day & Zimmerman, LLC,
    664 F.3d 822 (10th Cir. 2012)...................................... 23

McNeal v. Hi–Lo Powered Scaffolding, Inc.,
    836 F.2d 637 (D.C. Cir. 1988)...................................... 5

Miller v. Holzmann, 563 F.Supp.2d 54 (D.D.C. 2008),
    *aff'd in part, vacated in part, remanded sub nom.*
    U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.,
    608 F.3d 871 (D.C. Cir. 2010)...................................... 5

Novak v. Capital Mgmt. & Dev. Corp.,
    570 F.3d 305 (D.C. Cir. 2009)...................................... 4

*Owsley v. San Antonio Ind. Sch. Dist.,
    187 F.3d 521 (5th Cir. 1999)...................................... 20

*Peyton v. DiMario,
    287 F.3d 1121 (D.C. Cir. 2002)...................................... 5

*Powell v. Amer. Red Cross,
    518 F.Supp.2d 24 (D.D.C. 2007). ............................... 19, 20

Robinson-Smith v. GEICO,
    590 F.3d 886 (D.C. Cir. 2010)...................................... 24

Roney v. United States,
    790 F.Supp. 23 (D.D.C. 1992). ................................... 7

*Scott v. District of Columbia,
    101 F.3d 748 (D.C. Cir. 1996)...................................... 4

Smith v. Washington Sheraton Corp.,
    135 F.3d 779 (D.C. Cir. 1998)................................... 6, 17

Swanks v. Washington Metro. Area Transit Auth.,
    179 F.3d 929 (D.C. Cir. 1999)...................................... 4

v

Vela v. City of Houston,
  276 F.3d 659 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Young v. Cooper Cameron Corp.,
  586 F.3d 201 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

## Other Authorities

29 C.F.R. § 541.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*29 C.F.R. § 541.200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*29 C.F.R. § 541.201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*29 C.F.R. § 541.202(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*29 C.F.R. § 541.202(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

29 C.F.R. § 541.203(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

29 C.F.R. § 541.300. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*29 C.F.R. § 541.300(a)(2)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

29 C.F.R. § 541.700(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## STATEMENT OF THE ISSUES PRESENTED

The Defendants have appealed the decision of the district court issued on May 14, 2014.  [Lifecare Br., pp. i, 1.]  In that opinion, the district court rejected the Defendants' contention that they are entitled to judgment as a matter of law under Rule 50(b) because the evidence presented at trial was so one-sided that the jury should have found in their favor.  The question on appeal is whether there is substantial evidence to support the jury's verdict that Ms. Radtke and Ms. Cunningham were not exempt from the overtime pay requirements pursuant to the Administrative and Professional exemptions as defined in 29 C.F.R. § 541.200 and 29 C.F.R. § 541.300.  [Lifecare Br., 1.]

The Appellants also contend that they are entitled to a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure because of three purported errors during the trial.  The question on appeal is whether the Defendants can demonstrate that the trial judge abused his discretion in denying their Rule 59(a) motion.

## STATEMENT OF THE CASE

Plaintiff-Appellees Kathy Radtke and Carmen Cunningham (hereinafter collectively the "Plaintiffs") are medical records coders who brought claims under the Fair Labor Standards Act, the Maryland Wage and Hour Law, and the Maryland

1

Wage Payment and Collection Act against their employers Maria Caschetta; Advanta Medical Solutions, LLC; Joseph Molina; and Lifecare Partners, LLC (collectively, the "Employers"). A trial on all issues was had in January 2014 before Hon. Magistrate Judge John Facciola. At issue was whether the Plaintiffs were exempt from the overtime provisions of federal and state law under either the Administrative or Professional exemptions. The jury returned verdicts finding that the Plaintiffs were not exempt employees and therefore that the Employers had violated the law by failing to pay overtime compensation. The district court denied the Employers' motion for judgment as a matter of law under Rule 50(b) on this issue. [Jt. App., p. 409.]

The Employers also filed a motion for a new trial under Rule 59(a). The district court denied this motion as well. [Jt. App., pp. 409-13.]

The Employers contend that the trial court erred in denying its motions.


## SUMMARY OF THE ARGUMENT

The trial court correctly denied both of the Employers' motions.

There is ample evidence on the record, which a jury was entitled to (and apparently did) credit, to support the jury's finding that Plaintiffs jobs did not fall under the Administrative or Professional exemptions to federal and state overtime

laws. Contrary to the Employers' assertions, Plaintiffs' primary job duties did not include any significant discretion on matters of importance and did not impact significantly on general business operations. Moreover, their jobs did not customarily require advanced skill or educational training.

The Employers' brief, while struggling mightily to find evidence which might have supported a jury determination that the Plaintiffs <u>were</u> exempt, all but ignores the evidence supporting a finding that Plaintiffs <u>were not</u> exempt. This mode of argument misapprehends the law: On appeal, the Employers must show that there is no evidence to support the jury's verdict. The Employers' effort to show that there was evidence to support their position is irrelevant in the appeal of a Rule 50(b) motion. That there may be evidence supporting the opposing conclusion is not a sufficient basis to jettison a jury's verdict where the verdict is sufficiently supported by sound evidence.

The Employers' attempt to secure a new trial based on certain trial issues is also faulty. In each instance, the trial court acted appropriately to remedy any perceived errors.

This Court should reject the Employers' arguments and affirm the trial court's rulings on these matters.

## STANDARD OF REVIEW

In an appeal from a Rule 50(b) motion, this Court reviews *de novo* a district court's denial of a motion for Judgment as a Matter of Law.  Swanks v. Washington Metro. Area Transit Auth., 179 F.3d 929, 933 (D.C. Cir. 1999).  No court may grant a motion for judgment as a matter of law, setting aside a verdict,

> unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor.

Novak v. Capital Mgmt. & Dev. Corp., 570 F.3d 305, 311 (D.C. Cir. 2009); *see* Fed. R. Civ. P. 50 (a court may grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue").  It is axiomatic that "the court cannot substitute its view for that of the jury, and can assess neither the credibility nor weight of the evidence."  Scott v. District of Columbia, 101 F.3d 748, 753 (D.C. Cir. 1996). Indeed,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." . . . Thus, a court should grant a Rule 50 motion only when, "under the governing law, there can be but one [] conclusion as to the verdict" — that it defies reason.

4

Miller v. Holzmann, 563 F.Supp.2d 54, 75-76 (D.D.C. 2008) (citations omitted), *aff'd in part, vacated in part, remanded sub nom.* U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc., 608 F.3d 871 (D.C. Cir. 2010).

This Court reviews denial of a Rule 59 motion for a new trial under the abuse of discretion standard.  McNeal v. Hi–Lo Powered Scaffolding, Inc., 836 F.2d 637, 646 (D.C. Cir. 1988), *citing* Grogan v. General Maintenance Serv. Co., 763 F.2d 444, 447 (D.C. Cir. 1985)).  As this Court made clear in Hutchinson v. Stuckey, 952 F.2d 1418, 1420-21 (D.C. Cir.1992), "[w]hen the district court denies a motion for new trial, our scope of review is particularly narrow because the trial court's decision accords with the jury's."

In reviewing for an abuse of discretion, the Court considers whether the decision-maker failed to consider a relevant factor, whether the decision-maker relied on an improper factor, and whether the reasons given reasonably support the conclusion.  Peyton v. DiMario, 287 F.3d 1121, 1126 (D.C. Cir. 2002), *citing* Barbour v. Merrill, 48 F.3d 1270, 1278 (D.C. Cir. 1995); *see* Johnson v. United States, 398 A.2d 354, 365 (D.C.1979) (explaining the abuse of discretion standard).

# ARGUMENT

## I.  The Employers Have Not Demonstrated
## That the Jury Lacked a Sufficient Evidentiary Basis
## for Finding That the Plaintiffs Were Nonexempt Employees.

After the jury issued its verdict in favor of the Plaintiffs, the Employers moved

for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil

Procedure.  That rule permits a court to grant judgment against a prevailing party if

the court finds that the jury did not have a legally-sufficient evidentiary basis to find

for the prevailing party on that issue.

Judge Facciola denied the Employers' motion.  He held:

> there was sufficient evidence in the form of plaintiffs' testimony as to
> the nature of their duties and responsibilities to permit a jury to conclude
> that the defendants had not met their burden of proving that the pertinent
> exemptions [under the FLSA] were applicable.

[Jt. App., p. 399.]  Judge Facciola further noted, "the jury's verdict cannot possibly

be described as irrational or unreasonable."  [Id. at pp. 399-40.]

"The jury verdict stands unless the evidence and all reasonable inferences that

can be drawn therefrom are so one-sided that reasonable men and women could not

disagree on the verdict."  Curry v. District of Columbia, 195 F.3d 654, 659 (D.C. Cir.

1999), citing Smith v. Washington Sheraton Corp., 135 F.3d 779, 782 (D.C. Cir.

1998).  Applied to the facts of this case, that means that the jury's verdict must stand

unless the Employers can show that the jury lacked a legally sufficient basis for its

6

conclusion that the Plaintiffs are not exempt from the FLSA and related Maryland laws.  This they cannot do.

The Employers had the burden at trial to show that they are entitled to an exemption under the Fair Labor Standards Act.  The Plaintiffs had <u>no</u> burden to prove that they were not exempt.  <u>Kinney v. District of Columbia</u>, 994 F.2d 6, 10 (D.C. Cir. 1993) ("The District, of course, had the burden of showing that its employees are exempt from the FLSA's overtime provisions"), *citing* <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 196097 (1974) (regarding employer's burden to prove exceptions to FLSA generally); <u>Roney v. United States</u>, 790 F.Supp. 23, 26 (D.D.C. 1992).  To show that they are entitled to an exemption, the Employers had to convince the jury that the Plaintiffs' jobs were properly classified as "exempt" from the overtime pay requirements of the Fair Labor Standards Act.  The Employers argued that the Plaintiffs' jobs were exempt pursuant to the Administrative and Professional exemptions.

The burden at trial rested solely on the Employers — and the jury found that the Employers did not meet their burden.  In their post-trial Rule 50 motion, the Employers had the even heavier burden of demonstrating that the evidence in the case was susceptible of no interpretation but that the Plaintiffs were exempt employees.

As Judge Facciola found, they failed to do that, and they have offered this Court no reason to find otherwise.

### A.    The Employers Did Not Meet Their Burden at Trial to Prove the Applicability of the Administrative Exemption.

To prove that the Plaintiffs' jobs were subject to the Administrative exemption, the Employers had to prove that the Plaintiffs' "primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and also that their "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."[1]   The Employers did not prove either of these elements. *A fortiori*, they did not prove that the only conclusion that a jury could reasonably reach on the evidence in this case is that those two elements both exist, as is required in a Rule 50(b) motion.

---

[1] The Employers also had to prove that the Plaintiffs were paid at least $455 per week, but this element was uncontested.

1.    **The Plaintiffs Did Not Exercise "Discretion and Independent Judgment with Respect to Matters of Significance."**

As the Employers recognize (*see* <u>Lifecare Br.</u>, pp. 4-6), to qualify for the Administrative exemption, an employee's primary duty must include the exercise of "discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). This determination is made by considering a series of factors:

❖ whether the employee had authority to formulate, affect, interpret, or implement management policies or operating practices;

❖ whether the employee carried out major assignments in conducting the operations of the business;

❖ whether the employee's work affected business operations to a substantial degree;

❖ whether the employee had authority to commit the employer in matters that have significant financial impact;

❖ whether the employee had authority to waive or deviate from established policies and procedures without prior approval;

❖ whether the employee had authority to negotiate and bind the company on significant matters;

❖ whether the employee provided consultation or expert advice to management;

❖ whether the employee was involved in planning long- or short-term business objectives;

❖ whether the employee investigated and resolved matters of significance on behalf of management; or

❖ whether the employee represented the company in handling complaints, arbitrating disputes, or resolving grievances.

29 C.F.R. § 541.202(b). There is scant evidence in this case that the Plaintiffs' primary job duties related to these factors.

The Employers contend that Ms. Radtke's primary job duties included educating physicians and clinicians on proper coding, creating a "super bill"[2] of codes, and correcting coding errors committed by doctors (and informing doctors of their errors). [Lifecare Br., pp. 14-15; *see also* id. at pp. 27-30.] They then argue that these duties required the exercise of "discretion and independent judgment with respect to matters of significance."[3] [Id.] But none of those tasks reflect the factors listed in Section 541.202(b), and therefore the Employers have not proved that

---

[2] The "super bill" is simply a list of the "most frequently used codes," reducing the frequency with which one must refer to the heavy volumes that contain all of the codes. [Lifecare Br., p. 14.] This is not unlike, in the days before smart phones, creating a personal "contacts list" to avoid having to refer to a thick telephone book when looking for frequently-dialed telephone numbers. [*See* Supp. App., pp. 8-9 (Caschetta).]

[3] The Employers also discuss Ms. Radtke's supervisory chain as if it is relevant to the issue of her exempt status. [*See* Lifecare Br., p. 14 (regarding Pentagon and Kaiser); id. at p. 15 (regarding interaction with government officials).] This does not relate to Ms. Radtke's "primary duties" and has no bearing on the case.

Ms. Radtke exercised "discretion and independent judgment with respect to matters of significance."

As to Ms. Cunningham, the Employers state that her primary duties consist of supervising a small staff of coders; performing data quality reviews; overseeing coding for reimbursement claims and monitoring those claims; providing training to physicians on documentation for coding issues; providing coding support for providers; providing assessments and audits for speciality clinics; performing coding for outpatient clinic professional services; auditing clinical documentation; auditing coding performed by providers; serving as lead coder; tracking denials and rejected claims; and providing a weekly report. [Lifecare Br., pp. 8-9; *see also* id. at pp. 24-27.]

The tasks that the Employers list are not the sort of tasks described in the Section 541.202(b) factors. Even the more sophisticated tasks that the Employers list — like supervising other coders, providing weekly reports, providing feedback to physicians and mid-level providers, and performing data quality reviews — do not describe an exempt position; it is when an employee has authority to formulate, affect, interpret, or implement management policies or operating practices; or when she carries out major assignments in conducting the operations of the business; or

11

when she exercises the other responsibilities or powers listed in Section 541.202(b) that she is exercising judgment and discretion in her work.[4]

Thus, even by reference to the Employers' own description of the Plaintiffs' job duties, it is clear that the Plaintiffs' work consisted almost entirely of performing medical records coding and ensuring that others performing coding work were doing so accurately. The Employers' use of words that generally denote sophisticated work — like "auditing" and "training" — does not change that fact. The activities that the Employers describe when listing the Plaintiffs' job duties do not describe a job which requires the exercise of "discretion and independent judgment."

This case simply is not one in which a Rule 50(b) motion could be granted because ample evidence supports the jury's verdict. For example, the owner of one of the Defendant companies testified at trial that Ms. Cunningham had authority to formulate policy with respect to revising the coding system. [Lifecare Br., p. 13.] But the jury apparently rejected that testimony — and it had a reasonable evidentiary

---

[4] The Plaintiffs are not contending that satisfying the factors in Section 541.202(b) is required to demonstrate the exercise of judgment and discretion. It is not inconceivable that an employee's responsibilities require the exercise of judgment and discretion even if they do not align with the Section 541.202(b) factors. However, the Employers have shown neither the applicability of those factors to the Plaintiffs' duties nor any other basis for concluding that the Plaintiffs exercised judgment and discretion in the performance of their duties as that phrase is defined in wage and hour law.

12

basis on which to do so, because Ms. Cunningham testified explicitly that she never had a hand in formulating policy.  [Supp. App., p. 13 (Cunningham).]  That the jury credited Ms. Cunningham's testimony and not the company owner's testimony is not susceptible of second-guessing through a Rule 50(b) motion.

Similarly, the jury's finding that the Plaintiffs were nonexempt employees was well supported by evidence adduced at trial.  At trial, the Plaintiffs (and the Employers) presented evidence which demonstrated that the Plaintiffs' jobs consisted primarily of translating doctors' notes into the standardized codes that are used when requesting payment from insurance companies and Medicare.  [*See* Supp. App., pp. 4, 6 (Caschetta).]  As Ms. Caschetta herself testified, there are "right" codes and "wrong" codes, and a coder's work is assessed on the basis of adherence to the standards laid out in standardized manuals.  [Supp. App., pp. 10-12 (Caschetta) (coding involves use of established coding guidelines); id. at pp. 4-6 (Caschetta) (incorrect codes could subject physician to fraud charges); Jt. App., pp. 144-45 (§ 2.2.3).]  The exercise of judgment independent of these standards could cost a coder her job.  [Id.]  Thus, the jury's determination that the Plaintiffs' jobs were not exempt from the overtime pay requirement was based on sound evidence and there is therefore no basis to override the jury's findings.

13

2.    **The Plaintiffs Did Not Have Significant Impact on General Business Operations.**

The Employers also argue that Plaintiffs' work was exempt because it impacted general business operations.[5]   *See* 29 C.F.R. § 541.201.   Here too, though, the Employers have not proved that the evidence is susceptible only of the conclusion which they reach, and so Rule 50(b) does not permit overturning the jury verdict.

The Employers argue that Ms. Cunningham's primary duty was "directly related to Walter Reed's general business operations because Walter Reed was relying on Lifecare to help them redefine, redevelop, reengineer their business processes." [Lifecare Br., pp. 11, 25.]  They also argue that her work was exempt because it was used to help formulate the budget and because it directly translated into revenue for Walter Reed.  [Id.]

To be sure, Ms. Cunningham's work did relate to Walter Reed's general business operations.  But "relating to" general business operations is not the same as having a "significant impact on business operations," as is required by Section 541.201.  That Walter Reed relied on Ms. Cunningham's work to formulate business processes does not make her an exempt employee; this analysis is akin to saying that

_____

[5] Judge Facciola's opinion does not address this prong of the Administrative exception test for either Plaintiff because he found that the jury reasonably concluded that neither Plaintiff exercised discretion and independent judgment, rendering this prong is irrelevant.  [*See* Jt. App., pp. 401-02; 406.]

14

a fast food cashier is exempt from overtime laws because her work is used to by the restaurant to determine staffing and inventory needs. The work performed simply does not rise to the level of making management-level decisions.

With respect to Ms. Radtke, the Employers simply argue, without benefit of supporting law, that Ms. Radtke is exempt from overtime laws because if the Pentagon and Kaiser did not hire her to do the work, they would have had to do the work themselves. [Lifecare Br., pp. 15, 28.] True as that might be, it does not demonstrate that the work amounts to a significant impact on general business decisions.[6]

The work of medical records coding — which comprised the Plaintiffs' primary job duty — calls for no policy-making and does not impact the organization broadly. [See Supp. App., p. 14-20 (Cunningham).] To be "administrative" for purposes of the FLSA exemption, the Plaintiffs' primary work must influence or change policies, relate to the management policies of their employer or their employer's client, and relate to the running of the Employers' business. See Smith v. Gov't Employees Ins. Co., 590 F.3d 886, 895 (D.C. Cir. 2010). There is no evidence that either of the

---

[6] In the argument section of their brief (at pages 27-30), the phrase "general business decisions" appears but once with respect to Ms. Radtke. The remainder of the section seems to discuss Ms. Radtke's responsibility to ensure correct coding and to teach/train doctors to code correctly — which does not implicate "general business decisions."

Plaintiffs engaged in any activity impacting policy or the overall functioning of the enterprise.  In fact, Ms. Cunningham denies influencing policy in any way. [Supp. App., p. 13 (Cunningham).]  The evidence in this case was more than adequate to permit a jury to reject the Employers' contention that the Plaintiffs' work is administrative, and so the evidence required the trial judge's denial of Judgment as a Matter of Law.

**B.      The Employers Did Not Meet Their Burden at Trial to Prove the Applicability of the Professional Exemption.**

The applicable regulations and case law make crystal clear that there can be no finding in this case that the Plaintiffs' work warrants the Professional exemption. Thus, it is impossible for the Defendants to satisfy its burden to show that the evidence is so one-sided that reasonable jurors could not have reached a verdict in the Plaintiffs' favor.

The Professional exemption applies to employees whose primary duty is the performance of work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300(a)(2)(i).  In Young v. Cooper Cameron Corp., the court examined the word "customarily" in that definition and concluded:

> We therefore hold that an employee is not an exempt professional unless his work requires knowledge that is customarily acquired after a prolonged study. If a job does not require knowledge customarily acquired by an advanced educational degree as for example when many employees in the position have no more than a high school diploma, then, regardless of the duties performed, the employee is not an exempt professional under the FLSA.

*Young*, 586 F.3d 201, 206 (2d Cir. 2009).  In other words, it is the educational requirements of the job, not the education of the individual, that matter for the professional exemption.  Id. at 206 and cases cited therein.  However well-educated Ms. Radtke and Ms. Cunningham might be, the determination of whether their positions are properly classified exempt under the professional exemption rests not on their actual educational attainments but on those "customarily required" for the job. Id. at 205 (holding that "if advanced and specialized education is not customarily required, the exemption cannot apply, regardless of the employee's duties").

Our district court has had occasion to apply that rule.  In Powell v. Amer. Red Cross, 518 F.Supp.2d 24 (D.D.C. 2007), the court found that an employee who is a registered nurse is not subject to the professional exemption merely because she is a nurse.  Although the Department of Labor regulatory guidance specifically lists nurses as typically exempt professionals because of their education, the district court held that the exemption attaches not to the particular educational accomplishments of the employee but to the requirements of the job.  *Powell*, 518 F. Supp.2d at 39-40.

The Employers' recitation of facts regarding the Plaintiffs' backgrounds (*see* Lifecare Br., pp. 17-19) is therefore irrelevant. Ms. Radtke's background in the medical field (*see* id. p. 19) is irrelevant. Her membership in a coder's association (*see* id.) is irrelevant. Her college degree (*see* id.) is irrelevant. None of these accomplishments, however impressive they may be, is a requirement for medical records coding, so they are all irrelevant. The same is true for all of Ms. Cunningham's accomplishments set forth in the Employers' brief. [*See* Lifecare Br., pp. 17-18.]

Thus, the position taken by the Defendants — that regardless of the job's requirements, the Plaintiffs jobs were exempt because they had professional-level education — is not supported by law. This result makes sense, again, by comparison to the fast food worker: A cashier is not considered exempt even if she possesses a college or even an advanced degree if his job consists of serving food.

The relevant facts are those which illustrate the requirements of the position. The Employers did not demonstrate that the Medical Records Coder positions held by the Plaintiffs meet the standards set for the professional exemption. Nor can they; the Plaintiffs do not come close to meeting the level of education required to satisfy the Professional exemption. This is illustrated by the Fifth Circuit's decision in Vela v. City of Houston, 276 F.3d 659, 675 (5th Cir. 2001), in which the court

18

distinguished EMTs and paramedics (which it found to be non-exempt) from nurses (who were exempt Professionals) by focusing on the education requirements for the positions.  Even though EMTs and paramedics were required to have substantial and rigorous training (200 hours and 800 hours, respectively), nurses by comparison were required to have "three academic years of study in an accredited college plus a fourth year of professional course work in a school of medical technology." *See also* <u>Powell v. American Red Cross</u> 518 F.Supp.2d 24, 39 (D.D.C. 2007) (contrasting registered nurses, who are exempt based on education and licensing requirements, with Licensed Practical Nurses, who are not exempt despite their training and education requirements); <u>Owsley v. San Antonio Ind. Sch. Dist.</u>, 187 F.3d 521, 525 (5th Cir. 1999) (holding that because athletic trainers "are required to obtain a university degree and to undergo specialized training in subjects such as human anatomy, physiology, and sports medicine," they were exempt Professionals under the FLSA).

The Plaintiffs' jobs as Medical Records Coders were non-exempt because they required far less than the "knowledge of an advanced type . . . acquired by a prolonged course of specialized intellectual instruction and study" required by the Regulations for the Professional Exemption. *See* 29 C.F.R. § 541.300(a)(2)(I).  The Employers' motion for judgment as a matter of law based on the claimed Professional exemption was properly denied.

**C.    The Evidence Demonstrated That the Plaintiffs' "Primary Duty" Was Non-exempt Work.**

In order to be considered an exempt employee, not only must the employee's work be "administrative" (<u>i.e.</u>, the job required the exercise of discretion and independent judgment and had a significant impact on business operations) or "professional" (<u>i.e.</u>, the job requires the performance of work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction"), but those administrative or professional tasks must be the employee's "primary duty."

Here, the evidence showed that both of the Plaintiffs spent almost all of their time simply coding medical records.    The Plaintiffs maintained time sheets throughout their employment, on which they recorded tasks that they did, classified based on the nature of the work being done.    They recorded coding-related tasks on their time-sheets as either "Coding", "Data Entry", or "Auditing."[7]

Ms. Cunningham's time sheets (*see* <u>Jt. App.</u>, p. 346-88) demonstrated that she spent three-quarters of her time doing coding:

---

[7] Auditing is reviewing one's own records to ensure that they have been properly done.

| Carmen Cunningham | | | |
|---|---|---|---|
| **Task** | **No. of Hours** | **Percentage** | **Coding Time** |
| Coding | 910.90 | 39% | 39% |
| Training | 117.25 | 5% | |
| Auditing | 206.50 | 9% | 9% |
| Admin | 385.70 | 16% | |
| Meeting | 45.00 | 2% | |
| Downtime | 11.00 | 0% | |
| Data Entry | 647.50 | 27% | 27% |
| Developing | 34.50 | 1% | |
| **TOTAL** | **2,358.35** | **100%** | **75%** |

And according to her time sheets (*see* <u>Jt. App.</u>, p. 253-300), Ms. Radtke spent

virtually *all* of her time – 92% – doing medical records coding:

| Kathy Radtke | | | |
|---|---|---|---|
| **Task** | **No. of Hours** | **Percentage** | **Coding Time** |
| Coding | 1360.00 | 90% | 90% |
| Training | 14.50 | 1% | |
| Auditing | 3.00 | 0% | 0% |
| Admin | 93.95 | 6% | |
| Meeting | 9.00 | 1% | |
| Downtime | 0 | 0% | |
| Data Entry | 23.50 | 2% | 2% |
| Developing | 12.00 | 1% | |
| **TOTAL** | **1,515.95** | **100%** | **92%** |

The time spent by an employee on various tasks is a useful guide in

determining an employee's "primary duty." <u>Maestas v. Day & Zimmerman, LLC</u>,

664 F.3d 822, 827 (10th Cir. 2012); *see also* 29 C.F.R. § 541.700(b) ("employees

who spend more than 50 percent of their time performing exempt work will generally

satisfy the primary duty requirement.").  The fact that the Plaintiffs spent the vast bulk of their time doing medical records coding — non-exempt work — means that the jury's verdict is supported by evidence and so Rule 50(b) judgment is impermissible.

The Employers suggest that time records are "not pertinent" to this discussion because the term "coding" can mean a variety of things.  [Lifecare Br., pp. 17, 30 ("a number of different functions" can be placed "under the rubric of coding").]  But they do not specify what those "other things" are.  Therefore, they have offered no basis for concluding, consistent with their burden, that there is any administrative or professional activity hidden within the rubric of "coding."

The Employers also argue, relying on Robinson-Smith v. GEICO, 590 F.3d 886 (D.C. Cir. 2010), that an employee who exercises "some" discretion in the exercise of her primary duties may be considered an Administrative employee, exempt from overtime payment laws.  The problem with the Employers' argument is that their conclusion stretches the holding of *Robinson-Smith* far past the bounds of the decision.  *Robinson-Smith* makes the unremarkable holding that where an employee exercises "discretion and independent judgment" in the performance of his primary

22

<u>duties</u>, then the employee may fairly be held to be exempt from overtime payment laws.[8]  590 F.3d at 893.

Here, to the extent discernable in their brief (it is discussed with little detail at pages 30-32), the Employers appear to be arguing that Plaintiffs exercised discretion with respect to matters <u>outside of</u> their "primary duties."   For example, Ms. Cunningham is alleged to have engaged in discretion and independent judgment when transitioning Walter Reed into a more workable system utilizing standard coding techniques.  [*See* <u>Lifecare Br.</u>, pp. 12-13.]  But creating this new system was not part of Ms. Cunningham's "primary duties," as shown by the fact that the overwhelming majority of her time was spent performing actual coding.  [*See supra.*]

The Employers also try to shoehorn "teaching others to use the codes properly" into the general rubric of "the exercise of discretion and independent judgment," but the jury plainly acted reasonably when it concluded that informing physicians and other professionals on how to properly code their procedures does not require the exercise of discretion and independent judgment in matters of significance.  Indeed,

---

[8]  The Court went to pains to make it clear that the only question before it was "whether the district court correctly held that <u>the primary duty</u> of the GEICO auto damage adjuster does not include 'discretion and independent judgment.'" *Robinson-Smith*, 590 F.3d at 893 (emphasis supplied); *see also* <u>id.</u> ("GEICO must show that the auto damage adjuster's <u>primary duty</u> (1) includes work requiring the exercise of discretion and independent judgment . . ." (emphasis supplied)).

it is fundamentally no different from a grocery store checkout clerk teaching her co-worker how to correctly ring up avocados; neither is considered to be exercising "discretion and independent judgment" when the goal is simply to ensure that the system in place is used correctly.

Moreover, even if, *arguendo*, we assume that those job duties did involve the exercise of discretion and independent judgment, the Employers must still show that those activities constituted the Plaintiffs' "primary job duties." Incidental duties which are not an employee's "primary job duties" do not cause the job to be classified as exempt. Only if the duties which involve the exercise of discretion and independent judgment constitute the job's primary duties can the job be classified as exempt.

The tasks which the Employers list were <u>not</u> the Plaintiffs' primary job duties. For example, the Employers contend that Ms. Cunningham effected a transition from the haphazard record-keeping that was found at Walter Reed to a more orderly process. [*See* <u>Lifecare Br.</u>, pp. 12-13.] But they never demonstrate that it was a primary duty of her job. Indeed, when describing Ms. Cunningham's primary job duties, the Employers begin their list with a large number of bullet points relating to the <u>coding</u> (<u>Lifecare Br.</u>, pp. 8-9), only later mentioning the implementation of a transitioning system (<u>id.</u> at pp. 10-11).

24

Furthermore, the Employers characterize the task of implementing an orderly record-keeping process as Ms. Cunningham's "primary duty" (id. at pp. 10-11), but it is illogical to claim that one's "primary duty" can be a discrete project with a clear end goal, as was the case here. *See*, *e.g.*, Martin v. Indiana Michigan Power Co., 381 F.3d 574, 581 (6th Cir. 2004) (in considering "computer employee" exception, single project does not constitute employee's primary duty).

In sum, the Employers cannot prove that the only reasonable conclusion from the evidence in this case is that the Plaintiffs were exempt employees, and so their motion for judgment notwithstanding the verdict was properly denied. This Court should reject the Employers baseless appeal of the trial court's denial of the Employers' Rule 50(b) motion.

## II. The Employers' Rule 59(b) Motion for a New Trial Based Is Baseless.

The Employers moved the district court for a new trial pursuant to Rule 59(a) because of purported errors during the trial. [*See* Dkt. 176-1, p. 13]. The district court denied their motion. [Jt. App., pp. 409-13.] The Defendants now ask this Court to review the denial of that motion, but there is no evidence or argument even suggesting that the trial judge abused his discretion in denying a new trial.

A Rule 59 motion cannot be granted unless the movants have met their burden to prove that some error during trial caused harm. Clarksville-Montgomery County School System v. U.S. Gypsum Co., 925 F.2d 993, 1002 (6th Cir. 1991), *citing* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2803 (3d ed.). This is a heavy burden. *See*, *e.g.*, Hansen v. Barrett, 186 F.Supp. 527, 532 (D. Minn.1960).

The Employers list three events at trial which they believe warranted a new trial pursuant to Rule 59(a):

1. Ms. Radtke answered a question after an objection was sustained which was so highly prejudicial to the Employers that it could not be cured by a curative instruction and which improperly affected the jury's judgment regarding the issue of exemptions.

2. Ms. Cunningham's testimony was so contradictory that the Court should have charged the jury with a perjury instruction; and

3. The Plaintiffs' attorney made unduly prejudicial remarks during his opening statement that could not be cured by the curative instruction and which improperly affected the jury's judgment regarding the appropriate burden of proof.

In their discussion of these three events, the Employers make the conclusory statement that the trial judge erred. But they engage in little or no discussion of why the trial judge's decisions were errors rising to the level of abuse of discretion. They do not argue that the trial judge failed to consider a relevant factor, relied on an improper factor, or that the reasons on which the trial judge relied did not reasonably support the conclusion that he reached. Their appeal is plainly baseless.

26

1.  **The Employers' Conclusory Argument That the Jury Must Have Been Influenced by Ms. Radtke's Testimony Because It Rejected the Employers' Position Is Illogical and Does Not Demonstrate Cause for a New Trial.**

In arguing that a new trial is warranted because Ms. Radtke answered a question after the court had sustained an objection, the Defendants write:

> It is clear that the jury was influenced by Ms. Radtke's improper testimony because they found Ms. Radtke and Ms. Cunningham were non-exempt despite the lack of other evidence supporting their position that they were non-exempt employees.

> Defendants should be afforded a mistrial because the Court's instruction to the jury to disregard Ms. Radtke's testimony failed to cure the prejudice. See e.g. Cisson v. C.R. Bard, Inc., Case No. 2:11-cv-00195, (S.D. W.Va. July 10, 2013) (declaring mistrial and finding a curative instruction would have made the problem worse after witness improperly testified in response to question during direct examination because it would have been difficult for the jury to disregard the improper testimony and it was not a bell that could be unrung).

[Lifecare Br., pp. 39-40.]

This argument simply makes the conclusory assertion that the jury must have been influenced by Ms. Radtke's testimony because the jury rejected the Employers' position. They offer no causal link save for their own *ipse dixit*. This cannot yield a finding of an abuse of discretion.

Moreover, of course, the trial court did what all trial courts do when evidence is improperly articulated within earshot of the jury: it immediately instructed the jury to disregard the answer — twice. [Jt. App., p. 96 (immediately after the challenged

27

testimony); <u>Supp. App.</u>, p. 24 (again after a bench conference that immediately followed the testimony).  It takes a showing much greater than what the Employers have provided here to provoke an appeals court to find that such a curative instruction was insufficient.

> **2.      The Employers Make No Argument at All Regarding Why Ms. Cunningham's Testimony Requires a New Trial.**

With respect to Ms. Cunningham's allegedly "repeatedly contradict[ory]" testimony, the Employers point to Ms. Cunningham's trial testimony that she was not a supervisor despite her resumes stating that she was.  [<u>Lifecare Br.</u>, pp. 20, 40.] They claim, without any supporting legal authority, that this testimony should have resulted in a perjury instruction, and that failure to give this instruction amounts to an abuse of discretion.

The Employers' request for a perjury instruction was gross overreach.  First of all, this was a civil trial, not a criminal matter.  If Ms. Cunningham had in fact committed perjury, a prosecutor could prosecute but there is little that a trial judge in a civil matter can do.  Perjury in the civil litigation context essentially translates to a question of credibility for the jury to make.  Moreover, the Employers offered nothing to demonstrate that a perjury instruction would have made one whit of difference in the case.

Second, the Employer urged the jury to find that Ms. Cunningham's testimony about not being a supervisor was impeached by her resumes; Ms. Cunningham testified that she described her job consistent with her boss' description of her job. The jury was entitled to draw its own conclusions regarding Ms. Cunningham's credibility as a witness and to accept or reject either position. [*See* Jt. App., p. 412 (quoting jury instructed regarding witness credibility and impeachment).] The jury concluded that she was a Medical Records Coder and that any supervisory responsibilities she had did not change the nature of her work. The Employers offer no facts or reason to show that a perjury instruction would have changed that conclusion.

Indeed, this argument assumes, of course, that being a "supervisor" in and of itself strips an employee of non-exempt status. To be clear, and as the discussions contained in Sections I(A) and I(B), *supra*, make clear, regardless of any "supervisor" title Ms. Cunningham may or may not have held, she was not an exempt employee. The law is clear that an employee can have supervisory duties and still be non-exempt. *See*, *e.g.*, Ale v. Tenn. Valley Auth., 269 F.3d 680, 691 (6th Cir. 2001); 29 C.F.R. § 541.1 (a job title alone is insufficient to establish exempt status). Thus, even if the refusal to give a perjury instruction were error (and it was not), it was harmless.

29

**C.    The Employers Make No Argument Regarding Plaintiffs' Counsel's Closing Remarks and the Jury's Findings.**

Finally, the Employers contend that the Plaintiffs' attorney made unduly prejudicial statements during his opening statement and that these statements were so improper that the curative instruction was insufficient.  Specifically, the Employers point to a comment made in opening statements that the Employers carried a burden of proving by "clear and convincing evidence" that an exemption applied, when the actual standard was "preponderance of the evidence."  [Lifecare Br., pp. 21, 41.]

The Employers' argument for a new trial consists solely of the following: "there is a direct link between the errors and the jury's determination that Ms. Radtke and Ms. Cunningham were non-exempt."  [Lifecare Br., p. 41; Dkt. No. 176-1 at 15]. They offer no further proof or argument.  Plainly, the Employers cannot prevail in a claim in which they have made no argument.

Nor can the Defendants demonstrate that the district court's instruction to the jury that counsel's comments are not the governing standard and other curative instructions given by the court were ineffective at ensuring that the Defendants' interests were protected.  *See, e.g.*, Bowman v. Kaufman, 387 F.2d 582, 589 (2d Cir. 1967).  This bald assertion does not support an argument that the trial court abused its discretion in denying a new trial on this ground.  The Defendants' appeal of the Court's order denying a new trial pursuant to Rule 59(a) must be rejected.

30

## CONCLUSION

The Employers cannot demonstrate that the only conclusion that can be drawn from the evidence elicited in the trial of this case is that the Plaintiffs were exempt employees.  The fact-sensitive analysis of the applicability of the exemption was weighed by the jury and the jury disagreed with the Employers' contentions.  The Employers cannot overturn that determination simply because they do not like it.

Likewise, the Employers can offer no facts or law showing that the district court's determinations that the procedural defects about which they complain caused jury error.

As such, this Court should affirm the judgment of the District Court denying the Employers' Rule 50(b) and 59(a) motions.

Respectfully submitted,

February 18, 2015                    /s/ S. Micah Salb
                                     S. Micah Salb, Esq.

                                     /s/ Dennis Chong
                                     Dennis Chong, Esq.

                                     LIPPMAN, SEMSKER & SALB, LLC
                                     7979 Old Georgetown Road, Suite 1100
                                     Bethesda, Maryland 20814
                                     (301) 656-6905

                                     *Attorneys for Plaintiff-Appellant*

31

## CERTIFICATE OF SERVICE

In accordance with Rule 25(a)(2)(D) of the Federal Rules of Appellate Procedure and Local Rule 25(a) of the United States Court of Appeals for the District of Columbia Circuit, I hereby certify that on this the 18th day of February, 2015, I filed the required copies of the Corrected Brief for Plaintiff-Appellees with the Office of the Clerk of this Court via the Court's Case Management/Electronic Case Files system and I have dispatched for printing and delivery via first-class United States postage pre-paid the required copies of the Brief for Plaintiff-Appellees to the Defendants and to the Clerk of the Court.


February 18, 2015                           /s/ S. Micah Salb
                                           S. Micah Salb, Esq.



## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

I hereby certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) that a brief contain less than 14,000 words; inasmuch as it contains approximately 7,920 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using WordPerfect in Times New Roman 14 point type.


February 18, 2015                           /s/ S. Micah Salb
                                           S. Micah Salb, Esq.

32